699 So.2d 351 (1996)
Helena Babin KENNEDY
v.
James KENNEDY.
Nos. 96-C-0732, 96-C-0741.
Supreme Court of Louisiana.
November 25, 1996.
Opinion after Grant of Rehearing September 9, 1997.
Rehearing Denied October 10, 1997.
*352 Albert Moore Hand, Jr., Shreveport, Joseph William Fleming, Robert A. Hawthorne, Jr., Isaac M. Gregorie, Jr., Baton Rouge, for Applicant in No. 96-C-0732 and Respondent in No. 96-C-0741.
Tommy J. Adkins, Ruston, for Respondent in No. 96-C-0732 and Applicant in No. 96-C-0741.
Marion App French, Alexandria, for Louisiana Forestry Association, Amicus Curiae in No. 96-C-0732.
BLEICH, Justice.[*]
This case involves a conflict between the usufructuary and the naked owner of 143 acres of North Louisiana timberland. We are called upon to determine the nature and extent of the usufructuary's rights under LSA-C.C. art. 562 to harvest the timber from previously unexploited forest land. We hold that a usufructuary may not clear cut previously unfarmed timberlands, but may institute a program of periodic selective cutting of the timber.

FACTS
Walter Kennedy died in 1988, leaving a usufruct over 143 acres of land to his wife, plaintiff Helena Babin Kennedy, and the naked ownership of the land to his cousin, defendant James Kennedy. In April, 1993, Mrs. Kennedy informed James Kennedy of her intent to clear cut all of the standing timber on the 143-acre tract. At the time of trial, the value of the timber on the tract was estimated at $2,200-$2,500 per acre, and the value of the land itself, without trees or planted seedlings, was estimated to range from $200-$300 per acre. James Kennedy opposed the plan. Mrs. Kennedy brought an action for court approval to clear cut the tract in October 1993.
According to James Kennedy's recollection at trial, about 65-70 acres of the tract were at one time farmed for cotton, but the tract had not been cultivated since the mid-1930's. He said that there had not been a major cut on the land since the late 1930's or early 1940's. Occasional "bug cuts" had been made to remove trees infested with pine beetles, and one harvest of pine trees for poles was made in the late 1970's, when the market was extremely favorable. At the time of Walter Kennedy's death, no management plan to harvest the timber was in effect. The tract was covered with loblolly pine trees, and increasingly, several species of less valuable hardwood trees.
Mrs. Kennedy's experts, Freshwater and Peters, surveyed the land to analyze the varieties, number, age and size of the timber. Mr. Freshwater concluded that all of the land should be clear cut and planted with improved seedlings. Because much of the timber had already reached full maturity, little or no additional growth would occur if the stand were merely thinned or selectively cut. Moreover, the number of hardwoods on the land was increasing and would eventually replace the pines. Because these hardwoods produce less valuable lumber than the loblolly pines, a clear cut would have the advantage of eliminating these undesirable species. He also testified that there is currently a good lumber market, and excellent prices *353 could be obtained by harvesting all of the timber now.
Mr. Peters divided the land into a 113-acre tract of trees that were 60-75 years old, and a 30-acre parcel of 45-50 year-old trees. Mr. Peters recommended a clear cut of the 113 acres because maximum growth had been reached and hardwoods had begun to replace the pine. However, he found that the 30-acre tract would be amenable to selective cutting, because the trees still had growth potential and because it was still predominantly covered in pine.
Both Peters and Freshwater recommended that any clear cut areas be replanted with genetically improved hybrid pine seedlings, to be purchased by Mrs. Kennedy. The replanted trees would produce no merchantable timber for approximately the first 15 years. They would produce only less valuable pulpwood and chipping saw wood in years 15-30. The seedlings would need to grow 30-40 years to produce more valuable sawlogs comparable to the trees on the property at the time of the creation of the usufruct.
James Kennedy's forestry experts, Wade and Patterson, recommended instituting a program of selective cutting of trees with a diameter greater than 22 inches breast high, as well as certain diseased and deformed trees. This would leave some trees for reproduction. Although they agreed that the trees were close to full maturity at 60-70 years of age, they felt that there was some room for growth that would occur if the trees were thinned. Other advantages cited for selective cutting as opposed to clear cutting the timber were aesthetic value, wildlife protection, prevention of erosion, and testimony that fire, disease, and insects would have a less devastating effect upon uneven-aged, mixed timber than upon an even-aged all pine stand.
The trial court approved the timber management plan proposed by Mrs. Kennedy's expert, Mr. Peters, to selectively cut the 30-acre parcel and clear cut the 113 acres. The court of appeal affirmed as to the 30-acre tract, but ordered all cutting operations on the 113-acre parcel to cease, and ordered any proceeds therefrom to be returned to the naked owner. Kennedy v. Kennedy, 27,810 (La.App.2d Cir. 2/6/96); 668 So.2d 485.

LAW AND ANALYSIS
The Civil Code establishes a balance between the rights and responsibilities of the usufructuary of land and those of the naked owner. The usufructuary has the right to the use of the thing and all fruits of the thing subject to the usufruct. LSA-C.C. arts. 539, 550. The obligations of the usufructuary are to preserve the substance of the land, to use it as a prudent administrator, and to deliver it to the owner at the termination of the usufruct. LSA-C.C. art. 539. The naked owner has the right to dispose of, alienate, or encumber the property, but must not interfere with the usufructuary's enjoyment of the thing. LSA-C.C. arts. 603, 605. Full ownership of the land is restored to the naked owner at the termination of the usufruct. LSA-C.C. art. 628.
The Civil Code provides that the usufructuary is entitled to all fruits, but not the products of the thing subject to the usufruct. LSA-C.C. arts. 488, 550. Fruits are defined as "things that are produced by or derived from another thing without diminution of its substance." LSA-C.C. art. 551. Products, on the other hand, are things that are derived from the land as a result of diminution of its substance. LSA-C.C. art. 488. The comments to Article 551 acknowledge the ambiguous status of trees in usufruct:
Trees are born and reborn of the soil, but they are ordinarily considered to be capital assets rather than fruits on account of their slow growth and high value. See Harang v. Bowie Lumber Co., 145 La. 96, 81 So. 769 (1919). However, trees in a tree farm or in a regularly exploited forest may be regarded as fruits, because they are produced according to the destination of the property and without diminution of its substance. See Yiannopoulos, Personal Servitudes § 27 (1968).
LSA-C.C. art. 551, comment (b).
In Succession of Doll v. Doll, 593 So.2d 1239 (La.1992), this Court considered the issue of whether revenues derived from the sale of timber constitute fruits of an immovable for purposes of a collation action. The *354 Court focused on Article 551 and comment (b) thereto, and concluded that if the property in question was a "tree farm" then revenues from the sale of timber constituted a fruit of an immovable.
The land in Doll had been previously unexploited, and was not originally planted for the purpose of farming timber. Defendant purchased the land from her father before his death, and had selectively thinned and sold timber from the land. Id. at 1248. The Court considered whether the land should be defined according to its nature at the time the growth ensued, or according to the character of the cutting operations. The Court affirmed the court of appeal finding that the property was a tree farm, explaining as follows:
From the foregoing we determine designation as a "tree farm" is premised upon the existence of management techniques aimed at securing continuous production of timber, a conclusion which comports with the principle of article 551 and comment b thereto. It is clear a tree farm can not be defined by reference to its character at the time of the growth, but rather by the land's ability, through proper management techniques such as selective thinnings and plantings, to provide sustained yields. The timber sales at issue here were nothing more than selective thinnings intended to spur a fruitful and continuous yield over a prolonged stretch of time.... Accordingly, the revenues derived from the timber sales constitute a fruit.
Id. at 1249-50.
If we apply the reasoning of Doll in the usufructuary context, it would appear that if the land is cultivated as a "tree farm," then the timber derived therefrom may be considered fruits, which belong to the usufructuary. See also IP Timberlands Operating Co. v. Denmiss Corp., 93-1637 (La.App. 1st Cir. 5/23/95); 657 So.2d 282, 293, writ denied, 95-1958 (La.10/27/95); 661 So.2d 1348; 3 Planiol et Ripert, Traite pratique de droit civil francais 256, 770 (2d ed. Picard 1952). If, however, the property is cut without opportunity for sustained regrowth, then the proceeds must be characterized as a product, to which the usufructuary is not entitled. Myers v. Colfax Timber Co., 93-1315 (La.App. 3d Cir. 5/4/94); 640 So.2d 513, 520.
The inquiry does not end with the characterization of the land as a tree farm, however, because more specific codal provisions exist to explain the status of trees in usufruct. LSA-C.C. art. 560 covers the treatment of "trees" by the usufructuary. Article 560 provides that "[t]he usufructuary may cut trees growing on the land of which he has the usufruct ... but only for his use or for the improvement or cultivation of the land." The usufructuary's right to "trees" from land in usufruct is thus quite limited. If, however, the property can be characterized as "timberlands," then the usufructuary is granted much broader management power. LSA-C.C. art. 562 governs the rights of usufructuaries to timberlands:
When the usufruct includes timberlands, the usufructuary is bound to manage them as a prudent administrator. The proceeds of timber operations that are derived from proper management of timberlands belong to the usufructuary.
The substance of Articles 560 and 562 was formerly contained in Article 551, which remained substantively the same from 1825 until the 1976 revision:
The usufructuary has a right to draw all the profits which are usually produced by the thing subject to the usufruct.
Accordingly, he may cut trees on the land of which he has the usufruct, take from it earth, stones, sand and other materials, but for his use only, and for the amelioration and cultivation of the land, provided he act in that respect as a prudent administrator, and without abusing this right.
Article 551 thus limited the right of the usufructuary to the bulk of the standing timber upon the land. The 1808 Code had broadly allowed the usufructuary to "cut trees on land of which he has the usufruct, dig stones, sand and other materials both for his use and for sale provided that he act in these respects as a prudent father, and so as that the inheritance [estate] be not thereby rendered entirely barren or useless." The redactors explained the 1825 change as follows: "We have thought that the power *355 given to the usufructuary to sell the wood or earth at his pleasure might be ruinous to the owner and we have thought proper to limit his rights in this respect to what might be necessary for his own use and for that of the property." 1 La. Legal Archives, Projet of the Civil Code of 1825, p. 52 (1937) (emphasis supplied). See Yiannopoulos, Personal Servitudes § 58, pp. 122-23, n. 5 (3d ed.1989).
The 1976 Code separated the concept of "timber" from "trees" and established Articles 560 and 562 to govern the two types of things subject to usufruct. The legislature failed to define "timberlands" but defined "timber" in Comment (c) to Article 562 as "trees which, if cut, would produce lumber for building or manufacturing purposes. This includes any trees that could be cut for economic gain, such as pulp wood, pines, hardwoods or building lumber."
We see no reason to treat the 30-acre parcel of 45-50 year old trees differently from the 113-acre parcel of trees aged 60-75 years for purposes of deciding whether they constitute timberlands. Neither parcel has been farmed for timber in the past, yet both are possessed of mature forests capable of producing valuable saw timber. The land is capable of producing commercial quantities of lumber, and timber has at times been sold from the land. The forestry experts who testified at trial referred to the 143-acre tract of pine and hardwood trees as timberlands. Mr. Freshwater defined timberlands as "land with or without timber capable of growing timber in commercial quantities," while Mr. Peters defined timberlands as "land that's capable of producing commercial forest products." We conclude that all of the 143 acres at issue in this case may be characterized as "timberlands" subject to Article 562. The usufructuary therefore has a right to harvest the timber as a "prudent administrator" in accordance with Article 562.
The usufructuary's rights in relation to the naked owner are limited. To hold otherwise would allow ruin to occur to the property in violation of the fiduciary relationship of prudent management. Consistent with the Civil Code policy toward the usufruct/naked owner relationship in general, Article 562 was intended to take into account the interests of both the usufructuary and the naked owner. The comments to Article 562 provide as follows:
Timber operations by the usufructuary should not deplete the substance of the land. Modern techniques of regulated felling insure continuous production of timber and improvement of its quality. The interests of the naked owner are protected by the prohibition of waste and by the obligations of the usufructuary to act as a prudent administrator and to preserve the substance of the property subject to the usufruct.
LSA-C.C. art. 562, Comment (d).
Society has an interest in the continuous productivity of timberlands, the naked owner has an interest in the maintenance of crafts and skills organized around timber exploitation, and the usufructuary has an interest in the security of a regular income.
LSA-C.C. art. 562, Comment (b).
The requirement that the usufructuary preserve the substance of the property does not bar all initiative to alter the use of the property, however. The usufructuary may make improvements and alterations on the property at his cost with the consent of the naked owner, or failing consent, with court approval. LSA-C.C. art. 558. The 1976 Code revision changed the law to allow the usufructuary to make the "improvements or alterations that a prudent administrator would make, even if they change the destination of the property, provided, however, that they do not change its substance." Yiannopoulos, Personal Servitudes § 128, p. 259 (3d ed.1989); LSA-C.C. art. 558. Thus, even if the property has not previously been farmed for timber, the institution of farming operations on the land is permissible. Accordingly, Mrs. Kennedy may institute a program of selectively thinning and selling the timber on the land, so as to properly manage the wealth of standing timber, without depleting the substance of the land as a forest.

DECREE
The judgment of the court of appeal is affirmed as to the 30-acre portion of land on *356 which selective cutting operations were allowed. The court of appeal is reversed as to the 113-acre tract. The proceeds from the 113-acre tract should be allocated to Mrs. Kennedy insofar as they may be considered fruits flowing from an appropriate selective cutting plan, and to Mr. Kennedy insofar as they constitute products resulting from clear cutting operations exceeding the management plan proposed by Mr. Kennedy's experts. The case is remanded to the trial court for a determination of the amounts Mrs. Kennedy should receive in accordance with the selective cutting plan proposed by James Kennedy's forest management experts.
AFFIRMED in part, REVERSED in part, and REMANDED.
MARCUS, J., dissents.
KIMBALL, J., dissents and assigns reasons.
CALOGERO, C.J., dissents for reason assigned by KIMBALL, J.
KIMBALL, Justice, dissenting.
I respectfully dissent.
After surveying the applicable Civil Code articles, the majority concludes "even if the property has not previously been farmed for timber, the institution of farming operations on the land is permissible." Ante at 724. This, of course, is exactly what the usufructuary, Mrs. Kennedy, did. The majority also concludes that the entire 143 acre tract is "timberlands," and acknowledges that Mrs. Kennedy has a right to harvest the timber as a "prudent administrator" in accordance with La. C.C. art. 562. Ante at 723. The majority then ignores the factual findings of the trial court that, in this case, "prudent administration" of the 113 acre tract requires clear cutting of the tract and concludes, without finding the trial court manifestly erroneous as to those factual findings, that "Mrs. Kennedy may institute a program of selective thinning and selling the timber on the land, so as to properly manage the wealth of standing timber...." Ante at 724 (emphasis added). If the tract constitutes "timberlands," the usufructuary has a right to cut timber so long as it is done as a "prudent administrator," and the usufructuary has a trial court determination made on the basis of expert testimony that clear cutting 113 acres of the tract and selectively cutting 30 acres of the tract in fact constitutes "prudent administration," is not a reversal of the trial court's decision nothing more than an improper substitution of judgment?
In my view, there is no basis for reversing the trial court's factual findings in this matter. Furthermore, as even the majority opinion, when reduced to syllogistic form, demonstrates, the trial court's factual findings were made under a correct analysis of the law. As such, there was no legal or factual basis for the court of appeal to reverse the trial court's ruling in this matter with regard to the 113 acre tract, and this Court simply compounds the error by failing to reinstate the trial court's ruling.
As is clear from both the plain language of La. C.C. art. 562 and the history of the drafting of that article, the "open mines" doctrine was specifically rejected and, in its place, a "prudent administrator" standard incorporated when La. C.C. art. 562 was adopted. In this regard, the initial draft of La. C.C. art. 562 by the Louisiana Law Institute stated:
If the usufruct includes lands that were regularly exploited for timber at the time of the creation of the usufruct, and if there is no provision concerning the use and enjoyment of the landowner's rights in timber, the usufructuary is entitled to continue the operations of the owner; but he has no right to commence timber operations without the consent of the naked owner. (Emphasis added).
At the time this draft version of La. C.C. art. 562 was pending, the comments to La. C.C. art. 560 were apparently drafted by the Law Institute. Paragraph (b) of those comments reflects the language used in this original version of La. C.C. art. 562, stating:
For the usufructuary's right to continue the timber operations of the owner, and to treat as fruits the products of a regularly exploited forest, see Article 562, infra; Yiannopoulas, Personal Servitudes § 27 (1968). (Emphasis added).
*357 However, the Law Institute then substantially changed La. C.C. art. 562, rejecting the "open mines" doctrine which had been continued in the original draft and from which the comments to La. C.C. art. 560 had been drawn. In its revised form, that enacted by the Legislature, La. C.C. art. 562 now states:
When the usufruct includes timberlands, the usufructuary is bound to manage them as a prudent administrator. The proceeds of timber operations that are derived from proper management of timberlands belong to the usufructuary.
Unfortunately, the Law Institute failed to revise the comments to La. C.C. art. 560 to reflect the revision of La. C.C. art. 562. However, the comments to the revised and subsequently enacted version of La. C.C. art. 562 make it abundantly clear that the "open mines" doctrine has been rejected and, in its place, the right of the usufructuary to conduct timber operations on all usufructs of timberlands, so long as such operations are conducted as a "prudent administrator," has been established. In this regard, Comment (a) to La. C.C. art. 562 states: "This article is new. It establishes the duty of the usufructuary to manage timberlands as a prudent administrator and his right to the proceeds of certain timber operations." Comment (b) further notes "the usufructuary is bound to manage timberlands as a prudent administrator and is entitled to the proceeds of timber operations that derive from a proper management of timberlands ...," and Comment (d) states "[t]he interests of the naked owner are protected by the prohibition of waste and by the obligations of the usufructuary to act as a prudent administrator and to preserve the substance of the property subject to the usufruct." The majority unfortunately ignores the genesis of La. C.C. art. 562 and its comments. However, the fact that certain comments in the Code were not altered to reflect the change in La. C.C. art. 562 should not defeat the intended change in the law.
In the instant case, Mr. Kennedy left his wife a usufruct of these timberlands, presumably to secure her future. Mrs. Kennedy, acting as a prudent administrator in conformance with the Code, followed the considered recommendation of two foresters that prudent administration of these lands requires clear cutting the 113 acre tract and selectively cutting the 30 acre tract. In this regard, the expert's plan, adopted by the trial court, requires that drainage areas be left uncut to prevent erosion and that the 113 acre tract be prepared for planting and replanted with pine trees after cutting. Such measures, part of a "prudent administration" by the usufructuary of these timberlands, will insure that the substance of the property is preserved and that the naked owner's interest in the land is protected. There is, therefore, no basis in law or fact for the court of appeal's reversal of the trial court's ruling as to the 113 acre tract or the majority's decision ignoring the trial court's ruling as to the 113 acre tract.
Because the majority's decision in this matter defeats both the intent of the grantor and of La. C.C. art. 562, I respectfully dissent.

ON REHEARING
KNOLL, Justice.
We granted rehearing in this case to revisit the issue of a usufructuary's right to harvest timber from a previously unmanaged tract of land. The facts of this case are laid out in detail in the original opinion. Helena Kennedy, the 91 year old usufructuary of a 143 acre tract of mature loblolly pine trees, sought a declaratory judgment authorizing a clear-cut on the tract. James Kennedy, the 70 year old naked owner, opposed the clear-cut.

USUFRUCT OF TIMBERLAND
Ordinarily, the right of the usufructuary extends only to the fruits of the thing subject to the usufruct. La.Civ.Code art. 550. On account of their slow growth and high value, trees are usually considered to be capital assets rather than fruits. In the case of an ordinary tract of land, the usufructuary may cut trees only for his personal use or for the improvement or cultivation of the land. La.Civ.Code art. 560. The revision comments to Articles 551 and 560 suggest that the continuous production of a "tree farm" or "regularly exploited forest" may be regarded *358 as fruits, and thus belong to the usufructuary.
However, we find that the designation of the timber as "fruits" or "products" is irrelevant in the instant case, since the right of a usufructuary to harvest trees from timberland is governed by a specific article, La.Civ. Code art. 562, which states:
When the usufruct includes timberlands, the usufructuary is bound to manage them as a prudent administrator. The proceeds of timber operations that are derived from proper management of timberlands belong to the usufructuary.
La.Civ.Code art. 13 provides that where two statutes deal with the same subject matter, they should be harmonized if possible. However, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. State ex rel. Bickman v. Dees, 367 So.2d 283, 291 (La.1978). Article 562 is a new provision, added in the revision of the Civil Code articles on usufruct in 1976. It provides for a different disposition of the proceeds of timber operations on timberland than from cutting trees on ordinary land. Since Article 562 is specifically directed to timberland, it must be treated as an exception to the general rules of usufruct.
Two factual issues are raised under Article 562, namely, whether the tract is "timberland" and what constitutes "proper management" of that particular tract.

TIMBERLAND
Put simply, the central issue in the case sub judice is whether land containing valuable timber which has never been exploited or the subject of forestry management constitutes "timberland" for the purposes of the application of Article 562. Restated, does La.Civ.Code art. 562 require prior timber operations on the property for the land to be construed as "timberland"?
As noted by Justice Kimball in her dissent in our original opinion, this exact issue was considered by the drafters of the 1976 revision of the law of usufruct. The original draft of Article 562, prepared by the Louisiana State Law Institute, stated:
If the usufruct includes lands that were regularly exploited for timber at the time of the creation of the usufruct, and if there is no provision concerning the use and enjoyment of the landowner's rights in timber, the usufructuary is entitled to continue the operations of the owner; but he has no right to commence timber operations without the consent of the naked owner. (Emphasis added).
This original version of the article was intended to adapt the "open mines" policy for the usufruct of minerals to the usufruct of timberlands. Nevertheless, upon a motion by Prof. Joseph Dainow, this draft of the article was rejected in favor of the more flexible "prudent management" standard found in Article 562 today. The language requiring regular exploitation or continuing timber operations was removed.
La.Civ.Code art. 11 provides that the words of a law must be given their generally prevailing meaning, and that words of art and technical terms must be given their technical meaning when a law involves a technical matter. "Timber" is defined by La.Civ.Code art. 562, Comment (c) as trees which, if cut, would produce lumber for building or manufacturing purposes. The term "timberland" is defined in Webster's Third New International Dictionary as "land covered with forest and especially with marketable timber."
The expert witnesses also supplied definitions of "timberland" as applicable to forestry operations. Mr. Lewis Peters, Mrs. Kennedy's forestry expert, defined "timberland" as "land that's capable of producing commercial forest products," while Mrs. Kennedy's other expert, Mr. Richard Freshwater defined "timberland" as "land with or without timber capable of growing timber in commercial quantities." Mr. Gary Wade agreed that "timberland" is "any land that has some type of timber growth on it, be it merchantable or not merchantable."
"Timberland" is distinguishable from land which has been regularly managed and exploited for timber, which is best defined by the term "tree farm." The defining characteristic *359 of a "tree farm" as stated by this court is "the land's ability, through proper management techniques such as selective thinnings and plantings, to provide sustained yields." Succession of Doll v. Doll, 593 So.2d 1239, 1249 (La.1992). Mr. Peters noted that the term "tree farm" was "sort of like a trademark" and that "it's a designation that's given to landowners that apply and meet the requirements of the American Forestry Association whose ... under whose umbrella the tree farm system was created." The 143 acre tract is not a "tree farm," as it has never been managed, and is unable to produce a sustained yield of timber in its present state.
Under both the general definition and under the technical definition supplied by the foresters, the 143 acre tract is "timberland." For this tract not to be classified as "timberland," this court would have to create an alternative legal definition or term of art, requiring that the tract be regularly managed or exploited for timber prior to the initiation of the usufruct, making "timberland" synonymous with "tree farm." We decline to do so, especially since this would substantively reenact the original version of La.Civ.Code art. 562, which had been rejected by the Louisiana State Law Institute.

PROPER MANAGEMENT
The second issue before us is whether Mrs. Kennedy's plan to clear-cut the tract constitutes proper management or prudent administration of the tract. This is clearly an issue to be decided by the trier of fact. After a two day trial in which each party called two forestry expert witnesses, the trial court adopted the expert opinion of Mrs. Kennedy's forester, Mr. Lewis C. Peters, on the proper management of the tract.
Mr. Peters noted that the tract consisted of an even aged stand of mature and over mature loblolly pine, whose age was between sixty and seventy-five years. He testified that the life span of loblolly pine trees was between eighty and one hundred years. Mr. Peters stated that thirty acres in the southwest corner of the tract contained trees younger than those found on the remainder of the tract. Mr. Peters noted that undesirable hardwood species were beginning to succeed the pines on the tract, and he opined that because the tract had not been previously managed it would be difficult to rehabilitate.
Mr. Peters testified that the most prudent approach would be to harvest the merchantable timber on the majority of the tract, including the hardwoods, and replant the site with genetically superior seedlings. He stated that it would not be prudent to simply cut the larger pines since the smaller trees were the same age. He opined that the smaller trees were so old and suppressed that they would not respond to the removal of the larger trees. Mr. Peters outlined the risks associated with allowing the older pine trees to remain on the tract, noting that the trees were rapidly approaching the end of their life span, that they were vulnerable to insect attack, and that they could attract endangered species, thus preventing their harvest. Mr. Peters recommended that some hardwoods be left along watersheds and streams to prevent erosion and encourage wildlife. With respect to the thirty acre portion of the tract containing the younger trees, Mr. Peters recommended a selective cut of only the larger trees.
Obviously, what constitutes "proper management" of timberland will vary depending on the species, condition, size, location, age, and density of the timber on the tract. The trial court was presented with several expert opinions on the prudent administration of this particular tract, and was well informed about the several available alternatives. The trial court's acceptance of Mr. Peters' recommendations as the most prudent course of management of the property was reasonable, and we find no manifest error in its decision to accept Mr. Peters' expert opinion.
It is apparent from the findings of the trial court that prior to the initiation of the usufruct, the 143 acre tract had not been properly managed to provide sustained yields, and that selective thinnings and plantings on the tract would do little to rehabilitate the tract. Because the tract had been neglected for so long from a forestry standpoint, leaving some of the trees standing placed the entire stand *360 of timber at risk of infection, infestation, destruction by the elements, and succession by less desirable species. These risks greatly outweighed any benefits that could accrue by leaving the smaller trees. The trial court reasonably concluded that the most prudent management of the tract called for a clear-cut of the majority of the tract, followed by replanting with genetically improved seedlings.
Had this tract been a properly managed "tree farm" prior to the initiation of Mrs. Kennedy's usufruct, it is unlikely that her plan to clear-cut the tract would be considered prudent. However, we recognize that under certain circumstances, such as those found in the present case, a clear-cut may be warranted. The prudent administrator/proper management standard is a flexible one, and we are unwilling to hold that as a matter of law clear-cutting will never constitute the proper management of timberland.
Accordingly, under Article 562, Mrs. Kennedy is entitled to the proceeds of the prudent management plan proposed by her foresters and approved by the trial court. The judgment of the court of appeal, limiting Mrs. Kennedy's timber activities to a selective cutting from the thirty acre stand of younger trees is reversed, and the judgment of the trial court is reinstated.
REVERSED.
JOHNSON, J., dissents and assigns reasons.
VICTORY, J., not on panel. Rule IV, Part 2, Sec. 3.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, SECOND CIRCUIT, PARISH OF CLAIBORNE, STATE OF LOUISIANA
JOHNSON, Justice, dissenting.
I respectfully dissent.
La.C.C. Art. 560 provides: The usufructuary may cut trees growing on the land of which he has the usufruct and take stones, sand and other materials from it, but only for his use or for the improvement or cultivation of the land.
This case presents an area of land that has not been improved or cultivated in many years. As a result, many of the trees have reached their prime and others are near maturity. It is evident that some type of maintenance is needed to preserve this land for both the naked owner and the usufructuary. When the parties cannot agree as to the management plan, the courts must approve a plan. In this case, the majority approved a clear cut plan.
The experts have testified that selective cutting of the timberlands is far more prudent. This land is capable of producing commercial timber if properly maintained. The ecological aspects warrant a selective cutting and not a clear cut of the land. To follow the majority's plan would mean that the fruits of the land are being dissipated. La.C.C. Art. 562 provides: When the usufruct includes timberlands, the usufructuary is bound to manage them as a prudent administrator. The proceeds of timber operations that are derived from proper management of timberlands belong to the usufructuary. The statute is clear that "timber operations should not deplete the substance of the land. The interests of the naked owner are protected by the prohibition of waste and by the obligations of the usufructuary to act as a prudent administrator and to preserve the substance of the property subject to the usufruct." See comments La.C.C.P. Art. 562.
A clear cut of the land will affect the substance of the property and therefore, deny the naked owner the protection that the statutes in this regard afford him. Clearly, prudent management of the land requires that it be selectively cut in order to preserve the substance of the land.
NOTES
[*] Victory, J., not on panel. Rule IV, Part 2, § 3.