PETTIGREW, J.
|2The defendants, the priest and the Roman Catholic Church of the Diocese of East Baton Rouge (the Church), seek supervisory review of a trial court’s denial of their motion in limine, which had sought to prevent the plaintiffs in this matter from “mentioning, referencing, and/or introducing evidence at trial of any confessions that may or may not have taken place” between plaintiffs’ minor child and the priest, while the priest was acting in his official capacity as a Diocesan priest and hearing confession from his parishioner (the minor child). We granted certiorari to address the significant and res nova issue underlying the determination of the propriety of allowing such evidence: whether the priest is a mandatory reporter under Louisiana’s Children’s Code provisions. In reviewing the issue, vis a vis the trial court’s written judgment, for the following reasons, we find this matter compels us to exercise the authority vested in us, by La. C.C.P. art. 927B, to raise on our own motion the peremptory exception of no cause of action, and grant same, in effect, dismissing all of plaintiffs’ claims against the priest and the Church.
FACTUAL BACKGROUND
On July 6, 2009, plaintiffs, the parents of a minor daughter, filed a petition for damages suffered by them and their daughter as a result of the alleged inappropriate and sexual acts perpetrated on the minor child. They named as defendants: the alleged perpetrator, then-deceased George J. Charlet, Jr. (a well-known, long-time parishioner and active member of the Church, who died on February 9, 2009, while a criminal investigation into those allegations was pending); Charlet Funeral Home, Inc. (of which Mr. Charlet was the alleged President); the priest, for allegedly being a mandatory reporter who failed *726 to report the abuse allegations; and the Church, alleging vicarious liability for the alleged misconduct of the priest in failing to report the sexual abuse, as well as for the negligent training and supervision of the priest, (The plaintiffs later added a claim against the Church alleging additional liability for the acts of Mr. Charlet, under the theory that he, too, was an employee of the Church parish; however, these claims were later dismissed by summary judgment.)
| .¡The parents alleged that in 2000, their family moved from Baton Rouge to Clinton, in East Feliciana Parish, and began attending Our Lady of the Assumption Catholic Church, where they met and became friendly with a parishioner, Mr. Charlet, as well as the priest, the pastor of the church. According to the petition, from the young age of eight years, through her adolescent years, their minor daughter viewed Mr. Charlet as a second grandfather.
The petition alleged that during the summer of 2008, when the minor daughter was approximately twelve years old, there began an exchange of emails (1-2 per day) from Mr. Charlet to the minor child, involving “words of inspiration” and daily Bible verses. It is alleged that the emails soon increased in frequency (5-7 per day) and also began taking on a more personal tone, “while being laced with seductive nuances.” Mr. Charlet allegedly told the minor child to keep the nature of their email correspondence private and to herself, because “no person, other than God, would understand their mutual feelings for one another.” The petition contains various other paragraphs (none of which are directly relevant to the issue herein) detailing the continued wrongful acts of Mr. Charlet, which culminated with kissing and fondling the minor child.[2]
The petition alleged that the minor child became confused and scared over the evolving “relationship” with Mr. Charlet, and that on three separate occasions, she decided to seek spiritual guidance through the Sacrament of Reconciliation with the defendant priest. The petition alleges that on Tuesday, July 15, 2008, and Tuesday, July 29, 2008, prior to the 6:30 p.m. mass at the church, as well as on at least one other occasion after July 29, 2008, the minor child related to the priest during her confession |4(the Sacrament of Reconciliation) that Mr. Charlet had inappropriately touched her, kissed her, and told her that “he wanted to make love to her.” According to the petition, and consistent with the minor child’s subsequent deposition testimony, the priest allegedly responded to her that she simply needed to handle the situation herself, because otherwise, “too many people would be hurt.” The minor child testified that during one of those confessions, she told the priest what had happened and asked for advice on how to end it. According to her deposition testimony: “He just said, this is your problem. Sweep it under the floor and get rid of it.”
Subsequent to these three confessions, during which the minor child relayed the sexual acts by Mr. Charlet to the priest, the abusive acts (fully detailed in the petition) continued. On one occasion, the mi *727 nor child decided she needed to take the advice given to her by the priest during the confessions, and confront Mr. Charlet in person. She attempted to arrange a meeting with Mr. Charlet at his place of business, but when she arrived at the funeral home, she was surprised to find no one there other than Mr. Charlet, who then proceeded to sexually abuse her in his private office. The minor child became scared again, and instead of confronting him, she simply reminded him that her mother would be there shortly to pick her up; to which he responded, “We better go eat before I eat you up.”
According to the allegations in the petition and the deposition testimony in the record, subsequent “meetings” were had— one between the priest and Mr. and Mrs. Charlet, and another between the Charlets and the minor child’s parents (the plaintiffs) — concerning the “obsessive number of emails and phone calls” between Mr. Charlet and the minor child, and the seeming inappropriate closeness between the two that had been observed by various parishioners. Again, according to the allegations in the petition, after these meetings, Mr. Charlet contacted the minor child to let her know about the meetings. He informed her that he told them their relationship was mutual and appropriate; that he did not know if they believed him, but he assured her he would take care of making sure everyone believed their relationship was appropriate and mutual, and that she just “needed to play the game.”
| ¿However, shortly thereafter, the parents confronted their minor daughter about the emails and phone calls, at which time, she confessed to the true nature of the relationship with Mr. Charlet, including details of the inappropriate sexual contacts. The plaintiffs immediately contacted Mr. Charlet, ordering him to cease contact with their daughter. According to the petition, however, on a subsequent Sunday, the plaintiffs witnessed Mr. Char-let approach their daughter after church and hug her openly against her will. They then filed a formal complaint against Mr. Charlet with the East Feliciana Parish Sheriffs Department. According to the petition, the investigation was ongoing when, on February 9, 2009, Mr. Charlet died unexpectedly, after suffering a massive heart attack while in post-operative recovery, following knee-replacement surgery.
APPLICABLE LAW
In order to facilitate an understanding of the subsequent procedural history and a discussion and analysis of the issues presented, the law applicable to the parties’ arguments and resolution of the issues is provided at this juncture.
Louisiana Children’s Code article 603 provides definitions applicable throughout the Title VI of the Code. In relevant part, it provides, as follows (with emphasis added):
As used in this Title:
(1) “Abuse” means any one of the following acts which seriously endanger the physical, mental, or emotional health and safety of the child:
[[Image here]]
(c) The involvement of the child in any sexual act with a parent or any other person, or the aiding or toleration by the parent or the caretaker of the child’s sexual involvement with any other person or of the child’s involvement in pornographic displays, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
⅝ ⅝ :}c
*728 (15) “Mandatory reporter” is any of the following individuals....:
[[Image here]]
(c) “Member of the clergy” is any priest, rabbi, duly ordained clerical deacon or minister, Christian Science practitioner, or other similarly situated functionary of a religious organization, except that he is not required to report a confidential communication, as defined in Code of Evidence Article 511, from a person to a member of the clergy who, in the course of the discipline or practice of that church, [ (¡denomination, or organization, is authorized or accustomed to hearing confidential communications, and under the discipline or tenets of the church, denomination, or organization has a duty to keep such communications confidential. In that instance, he shall encourage that person to report the allegations to the appropriate authorities in accordance with Article 610.
Louisiana Code of Evidence article 511, entitled communications to clergymen, which is referenced in the foregoing Children’s Code definitions provision, provides:
A. Definitions. As used in this Article:
(1) A “clergyman” is a minister, priest, rabbi, Christian Science practitioner, or other similar functionary of a religious organization, or an individual reasonably believed so to be by the person consulting him.
(2) A communication is “confidential” if it is made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication.
B. General rule of privilege. A person has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication by the person to a clergyman in his professional character as spiritual adviser.
C. Who may claim the privilege. The privilege may be claimed by the person or by his legal representative. The clergyman is presumed to have authority to claim the privilege on behalf of the person or deceased person.
Louisiana Children’s Code article 609, addressees mandatory, as well as permitted, reporting and provides, in pertinent part (with emphasis added):
A. With respect to mandatory reporters:
(1) Notwithstanding any claim of privileged communication, any mandatory reporter who has cause to believe that a child’s physical or mental health or welfare is endangered as a result of abuse or neglect or that abuse or neglect was a contributing factor in a child’s death shall report in accordance with Article 610.
(2) Violation of the duties imposed upon a mandatory reporter subjects the offender to criminal prosecution authorized by R.S. 14:403(A)(1).
Louisiana Revised Statutes 14:403, referred to in the Children’s Code as the penalty provision for violations of the mandatory reporter laws provides, in pertinent part (with emphasis added):
It403. Abuse of children; reports; waiver of privilege
A. (l)(a) Any person who, under Children’s Code Article 609(A), is required to report the abuse or neglect or sexual abuse of a child and knowingly and willfully fails to so report shall be guilty of a misdemeanor and upon conviction may be fined not more than five hundred dollars or imprisoned for not more than six months, or both.
[[Image here]]
*729 B. In any proceeding concerning the abuse or neglect or sexual abuse of a child or the cause of such condition, evidence may not be excluded on any ground of privilege, except in the case of communications between an attorney and his client or between a priest, rabbi, duly ordained minister or Christian Science practitioner and his communicant.
SPECIFIC FACTS, ALLEGATIONS, AND PROCEDURAL HISTORY RE: THE PRIEST AND THE CHURCH
Specifically, as to the priest, the petition alleges that he was negligent in advising the minor child during her confessions on three separate occasions that she needed to handle the abusive relationship with Mr. Charlet by herself because too many people would be hurt if they found out. The petition seeks damages for this alleged negligent advising. The petition further specifically alleged that the priest is a “mandatory reporter” pursuant to La. Children’s Code art. 603(15)(c), with a resulting mandatory legal duty, pursuant to La. Children’s Code art. 609, to report the abuse to the proper local authorities and to the minor’s parents. Thus, the plaintiffs allege the priest is also liable to them for his failure to immediately report the abuse, and that the Church is liable for the negligence of the priest as its employee, as well as its own alleged negligence in failing to train and supervise him as a mandatory reporter of child abuse.

Motion In Limine At Issue Herein

In February 2013, the priest and the Church filed a motion in limine, seeking to exclude at trial all evidence, including testimony by the minor child herself, about the confessions. The denial of that motion is the subject of this supervisory review and grant of certiorari. However, the defendants had also filed a motion for summary judgment, which was heard and decided prior to the ruling on the motion in limine. Although no review has been sought of the denial of the motion for summary judgment, the issues raised and the defendants’ arguments in support of that motion are similar to, and often | ^overlap those advanced in support of the motion in limine. Also, they are pertinent to a full understanding of the issue before us on the propriety of the denial of the motion in limine. Therefore, to that extent, both motions will be discussed.

Summary Judgment

First, defendants argued that any and all damages suffered by the minor child were at the hands of and due to acts of no one other than Mr. Charlet, not the priest. Moreover, they contended that the priest attained knowledge of these incidents of abuse through the Sacrament of Reconciliation, pursuant to which that communication was cloaked with a statutory confidentiality, as well as protected against disclosure by the Catholic Canon Law. They maintained that according to La. Children’s Code art. 603(15)(c), a priest is classified as a mandatory reporter when the information is received while he is not performing his vocational ministry, but the statute specifically excludes the reporting of “confidential communications,” as defined by Article 511 of the La.Code of Evidence. That codal article provides that a communication is confidential when relayed to a clergyman when it is made in private and not intended for further disclosure. See La. C.E. art. 511(A)(2). They further argued that the penal statute for failing to report, La. R.S. 14:403(B), also supports their claim of privilege, by providing:
In any proceeding concerning the abuse or neglect or sexual abuse of a child, ... evidence may not be excluded *730 on any ground of privilege, except in the case of communications between an attorney and his client or between a priest ... and his communicant,
Defendants also argued that the priest is bound by the mandates of the Roman Catholic Church Law — known as the Code of Canon Law — which also preclude him from divulging information acquired through the Sacrament of Reconciliation. They attached to their motion the affidavit of Fr. Paul Counce, Judicial Vicar and canon lawyer for the Diocese, which explained in detail and cited the law of the Catholic Church, and the obligation of confidentiality that a priest has in relation to anything heard in confessions/reconciliations, which is cloaked by the “Seal of Confession.” The affidavit attests that the “Seal” is absolute. Moreover, a violation thereof results in the “in stanter ” excommunication of the priest — the most severe penalty known to the Church.
|aThe defendants maintained that it is undisputed that the only communications had between the minor child and the priest concerning the sexual acts committed by Mr. Charlet occurred during the Sacrament of Reconciliation; therefore, to compel the priest to disclose such communications under threat of statutory penalties, whether civil or criminal, would be to place his duty to his faith and his duty to abide by statutory authority into direct conflict. They maintained that to compel the priest to disclose such communications would entangle the State in matters of church doctrine, implicating the constitutional right of the free exercise of religion, protected by the First Amendment.[3] They claimed that the Louisiana Legislature recognized as much by enacting a statutory scheme that exempts such communications from the mandatory reporting provisions in the Children’s Code.
Additionally, the defendants asserted that the Diocese cannot be held liable, because the church itself has no duty to report, even if the plaintiffs’ misaligned claims that the priest is a mandatory reporter were to be upheld.
Finally, the defendants asserted that there is no private right of action against a mandatory reporter for the failure to report; the statutory remedy being limited to criminal prosecution pursuant to La. R.S. 14:403. Although there is no Louisiana jurisprudence, defendants cite several cases from other jurisdictions with similar mandatory reporting statutes that have held that there is no private cause of action for a violation of such a statute — the remedy therefor being limited to criminal prosecution by the state. The underlying reasoning for such a finding in those cases is that the duty is owed to the general public — for the protection of its minor children — and not to any one person in particular.
Plaintiffs opposed the motion for summary judgment on several fronts; only those pertinent to the motion in limine are presented here. They argued — without admitting — |that10 even if the priest were statutorily exempt from the definition and obligations of a mandatory reporter, the only thing excluded would be the knowledge acquired by the priest during the minor child’s confession. They maintained the evidence derived from Ms. Charlet’s *731 deposition reveals that separate and apart from any information received directly from the minor child during her confessions, the priest himself had independently observed and discussed his concerns about the interaction between Mr. Charlet and the minor child, and that he expressed those concerns with them. During that meeting, according to Ms. Charlet’s deposition, the priest advised the Charlets to speak with the minor child’s mother and he advised Mr. Charlet to end his friendship with the minor child. Thus, to the extent that the priest independently observed and voiced concerns about seemingly inappropriate relations between Mr. Charlet and the minor child, plaintiffs argued that he indeed did have the statutory duty as a mandatory reporter, since this information was acquired outside the confidential communication, and is not cloaked with the privilege of a confidential communication. Thus, plaintiffs maintained, a genuine issue of material fact exists as to whether, to this extent, the priest was a mandatory reporter under La. Children’s Code arts. 603 and 609, such that summary judgment is precluded.
Plaintiffs additionally maintained that any privilege attaching to the confessional communications had been waived by the minor child, the “holder” of the privilege, by and through her consent and disclosure of the communications. They also submitted an affidavit executed by them and the minor child, expressly “waiving” her privilege regarding her confession.
Finally, plaintiffs disputed the defendants’ claim that reporting the information was against Catholic Canon Law, and even argued that pursuant to Catholic Canon Law, the priest had a duty to report the abuse, and the Church is vicariously liable for the priest’s breach of that duty. In support of this position, plaintiffs submitted into evidence relevant portions of the Code of Ethics and Behavior for Adults who Minister with Minors in the Diocese of Baton Rouge (“Diocesan Code of Ethics”) and guidelines regarding sexual abuse of children. However, as will be seen below, our ultimate issue obviates discussion of this argument, and no further explanation of plaintiffs’ argument is necessary.
Inin denying the motion for summary judgment, as to the priest’s duty to report, the trial court expressly found genuine issues of material fact as to what the priest knew, when he knew it, when he get that Information, if that information was acquired somehow other than during the confession, and ultimately, what duty the priest may have had at that point. The trial court noted some of the factual issues indicated that there “may have been some sort of duty on the part of the priest for what he observed and upon which he commented outside of the confessional and outside of what [the minor child] may have told him in the confessional.” However, the trial court also added:
So I have made my position perfectly clear that while the law may give the plaintiffs the right to inquire as to what went on in that confessional, ■ I’m not going to hold [the priest] to any standard of having to say what went on and to violate his vows to the Church. But I believe there are certain factual issues of things that he observed outside the confessional which could conceivably create a duty on his part to have taken more action than he took.
Thus, while the trial court denied the motion for summary judgment on the failure to report issue, it is clear that the ruling encompassed a finding that the confession itself was confidential and protected from disclosure.

Denial of Motion in Limine

In denying the defendants’ motion in limine, thereby allowing the plaintiffs to *732 present evidence of the confession, the trial court noted the apparent inconsistency-in the Children’s Code articles: one provision stating that clergy is excepted from being a mandatory reporter for anything that is a confidential communication (Art. 603(15)(c)), and the other mandating reporting “notwithstanding any claim of privileged communication” (Art. 609). However, the court then noted that the privilege, granted by Code of Evidence Art, 511, clearly belongs to the communicant, such that it can be waived by the communicant. Thus, the trial court found the testimony of the minor child regarding the confessions was relevant and, certainly, as the holder of the privilege, she was entitled to waive It and testify. When pressed by the defendants’ counsel as to whether that meant that the trial court was holding that the priest also had a duty to report, the trial court stated, “Yes, at this point, there may be some duty based on [Art.] |1⅞609.” The trial court also noted that its earlier ruling also permitted questioning of the priest concerning any other information acquired by him about the abuse outside of the confessional. The trial court, although denying the motion, also commented that “I certainly recognize the conundrum with which [the priest] is presented, and I know his solution to that is going to be that he is not going to say anything about any confession.” The motion in limine was denied by judgment dated February 22, 2013.
DISCUSSION/ANALYSIS
IS A PRIEST A MANDATORY REPORTER PURSUANT TO LOUISIANA’S CHILDREN’S CODE?
The parties maintain and argue that the pivotal issue underlying the dispute of whether the motion in limine was properly denied, allowing evidence to be submitted concerning the occurrence and/or contents of a confession between the minor daughter and the priest is whether a Catholic priest — or any member of the clergy — is exempt from Louisiana Children’s Code art. 609’s mandatory child abuse reporting requirements, pursuant to La. Child. Code art. 603(15)(c), when the facts allegedly giving rise to the duty to report were learned during the Sacrament of Reconciliation.
Defendants maintain that under the facts of this case, the priest is exempt from the mandatory reporter requirements. Thus, they assert that the priest is shielded from having to testify as to any facts learned during that confession. Moreover, they maintain that since the priest has no duty to report, there can be no breach of said duty, rendering any and all testimony or evidence regarding the Sacrament of Reconciliation and/or the contents revealed therein irrelevant to the purported cause of action by plaintiffs against the priest and the Church for the breach of said duty. For the following reasons, we agree, and find the trial court erred.

Rules of Statutory Construction!Interpretation

Very recently, the Louisiana Supreme Court reiterated the rules that apply when determining the true meaning of a statute:
The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the legislature to enact the law. In re; Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128, The rules of statutory [^construction are designed to ascertain and enforce the intent of the legislature. Id.; Stogner v. Stogner, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766. Legislation is the solemn expression of legislative will, and therefore, interpretation of a law involves primarily a search for the legislature’s intent. La. Rev.Stat. § 1:4 (2004); La. Civ.Code art. *733 2; Lockett v. State, Dept. of Transp. and Development, 03-1767, p. 3 (La.2/25/04), 869 So.2d 87, 90. When a law is dear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. 9; Lockett, 03-1767 at p. 3, 869 So.2d at 90-91; Conerly v. State, 97-0871, p. 3-4 (La.7/8/98), 714 So.2d 709, 710-11.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. Boyter, 99-0761 at p. 9, 756 So.2d at 1129; Stogner, 98-3044 at p. 5, 739 So.2d at 766. The statute must, therefore, be applied and interpreted in a manner that is consistent with logic and the presumed fair purpose and intention of the legislature in passing it. Boyter, 99-0761 at p. 9, 756 So.2d at 1129. This is because the rules of statutory construction require that the general intent and purpose of the legislature in enacting the law must, if possible, be given effect. Id.; Backhus v. Transit Cas. Co., 549 So.2d 283, 289 (La.1989). It is presumed the intent of the legislature is to achieve a consistent body of law. Stogner, 98-3044 at p. 5, 739 So.2d at 766.
La. Civ.Code art. 13 provides that, where two statutes deal with the same subject matter, they should be harmonized if possible. Kennedy v. Kennedy, 96-0732, 96-0741, p. 2 (La.11/25/96), 699 So.2d 351, 358 (on rehearing). It is a well-settled rule of statutory construction that all laws dealing with the same subject matter must be construed in pari materia. La. Civ.Code art. 17 [ (1870) ]; Reed v. Washington Parish Police Jury, 518 So.2d 1044, 1047 (La. 1988). Statutes are in pari material— pertain to the same subject matter— when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. 2B Sutherland Stat. Const. § 51:3, p. 222 (7th ed.2012).
Pociask v. Moseley, 2013-0262 (La.6/28/13), 122 So.3d 533 (2013).
Guided by these precepts, we find as follows. Pursuant to the clear language of La. Child. Code art. 603(15)(c), a “member of the clergy,” which includes a priest, is not required to report a “confidential communication” as defined in the Code of Evidence Article 511. As defined in Art. 511, a communication made to a clergyman is confidential when it is made privately and not intended for further disclosure. Thus, any communication had between the minor child and the priest, during the minor child’s confession with that priest, is a confidential communication, under La. C.E. art. 511. It is also equally clear that any alleged confession between the minor child and the priest |14in this case is a “confidential communication” as defined in Article 511. To the extent that the plaintiffs attempt to imply that the minor child’s conversation with the priest in this case was not “truly” a confession, because she was not confessing her own sin in the course of relaying the alleged abuse, we reject such argument as not supported by the facts. We further note that this argument is belied by the plaintiffs’ own allegations in their petition and otherwise, and the fact that the minor child chose to disclose the abuse to the priest during the Sacrament of Reconciliation. We note that even the minor child, in her deposition, testified that she was under the clear impression that she was going to “confession” when she spoke with *734 the priest about the alleged abuse. Therefore, the record clearly established that the communication was had while in confession; therefore, it is statutorily defined to be a confidential communication.
Given that the communication shared during confession is a confidential communication made to a clergyman, pursuant to the dictates of La. Child. Code art. 603(15)(c), the priest “is not required to report ” the communication, even if it concerns allegations of sexual abuse of a child. Therefore, it is axiomatic that the priest, under these circumstances, is not, and cannot be, a mandatory reporter. Accordingly, La. Child. Code art. 609, which addresses mandatory reporters, and mandates the reporting of any child abuse or neglect, “[notwithstanding any claim of privileged communication,” is simply and wholly inapplicable. To interpret Art. 609 as applicable to priests as mandatory reporters, as argued by the plaintiffs, and apparently as found by the trial court, runs afoul of the rules of statutory construction, because such interpretation would render the exemption in La. Ch.C. art. 603(15)(c) meaningless. Nevertheless, a violation of the duty to report set forth in La. Children’s Code art. 609(A)(1) is subject only to criminal prosecution authorized by La. R.S. 14:403(A)(1); however, the penalty for such a violation is negated by La. R.S. 14:403(B) when the communication is between a priest and his communicant.
In addition to comporting with the aforementioned principles of statutory construction, we find further support for our conclusion — that the Children’s Code does not render a priest a mandatory reporter — by reviewing the legislative history of the 11sstatutory scheme for mandatory reporting and discerning the legislative intent. “Member of the clergy” was added as a class of “mandatory reporters” by amendment to La. Child. Code art. 603, in 2003, adding them to the list of defined mandatory reporters. The definition, as stated before, includes that a priest is not required to report a confídential communication. The 2003 comments to that article address the reasons for the amendment, and the limitations that were intended, as follows:
The scope of the definition of “mandatory reporters” of child abuse has always recognized that priests, rabbis, pastors or other religious ministers typically provide counseling to members of their congregations and that many denominations consider those communications, such as the confessional, to be sacrosanct and nondisclosable. Respecting that policy, former law included religious ministers within the category of “mental health/social service practitioner” but exempted them from mandatory reporting if the knowledge of abuse or neglect arose out of a “confession or other sacred communication”. In 2003, the legislature created a special category for members of the clergy and continued exemption for “confidential communication’’, the term used by the Evidence Code. Code of Evidence Article 511, which governs communications to clergymen, defines the privileged confidential communication as one “made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication.” Members of the clergy who exclusively provide spiritual counseling are not required to report disclosures of abuse made in the course of a confidential communication. However, the legislature also recognized that members of the clergy may also engage in other roles, such as administrative and organizational work as well as provide supervision for other clergy or lay workers. The exemption *735 from reporting does not extend to non-confidential communications given to a priest or other minister during administrative, supervisory, or secular counseling or other type of conference.
La. Children’s Code art. 603, 2003 Comments (Emphasis added.) Thus, it was clearly envisioned and intended that members of the clergy were to be given a special exemption, via the exclusion of confidential communications as defined in Code of Evidence art. 511, unlike other mandatory reporters, pursuant to La. Ch.C. art. 609, who may also possess communication privileges, such as physicians, psychologists, and other mental health/so-eial service practitioners, but who must nonetheless, report.
Thus, it appears axiomatic that a priest who learns of alleged sexual abuse during confession (Sacrament of Reconciliation) is not a mandatory reporter, and | ¶(¡therefore, not subject to the mandatory reporting requirements of La. Ch.C. art. 60.9.[4] Because we have concluded that the priest is not a mandatory reporter, there can be no private or civil cause of action against him for any breach of a statute inapplicable to him; thus, any evidence or testimony, by anyone, regarding the occurrence of a confession, or the subject matter thereof, is wholly inadmissible, irrelevant, and non-probative. Accordingly, the motion in li-mine, seeking to exclude all such evidence, should have been granted. We find the trial court erred, and hereby, reverse that denial, and grant said motion.
NO CAUSE OF ACTION
However, and more significantly, we are compelled in this matter to exercise the authority granted us under La. C.C.P. art. 927B to notice, on our own motion, the peremptory exception of no cause of action, grant the same, and dismiss the plaintiffs’ suit against the priest and the Church in its entirety.
In considering whether a petition states a cause of action, a court must accept all well-pleaded facts in the petition as true. The function of the exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts of the pleading. Evans v. Louisiana Bd. of Parole, 2012-2053 (La.App. 1 Cir. 6/7/13), 2013 WL 2488943 (unpublished).

Negligent Advising

In addition to alleging that the priest breached a purported duty to report (which we have found to lack merit because a priest under the facts of this ease is not a mandatory reporter), the plaintiffs petition alleges that the priest was negligent in the advice he gave the child during confession.
117First, we note that the plaintiffs cite no basis, nor do we know of any under Louisiana law, for imposing a duty on a clergy member, the breach of which would sustain a private or civil cause of action. *736 We note that a cause of action in malpractice is available against a physician or other mental health or social service provider, which may include elements of negligent advice; however, that duty emanates from the professional skills and training and dispensation of mental health services and is adjudged by the standard of care established within that profession.
Additionally, any such alleged “negligent advice” in this matter occurred during the Sacrament of Reconciliation, which we have already found to be a “confidential communication,” the disclosure of which is prohibited. Furthermore, the giving of advice, including the allegedly negligent spiritual advice, in this matter, is by definition, voluntary suggestions based on personal opinion, given based on the facts with which one is presented, in an effort to guide and direct another’s decisions, actions, or thoughts. Such advice does not lead to imposition of a duty which would be impossible to dictate, and much more so to monitor and adjudge. Spiritual advice is also subjective at best, and not susceptible of being adjudged “wrong” or “right.” Indeed, as noted by the second circuit in Lann v. Davis, 34-892 (La.App. 2 Cir. 8/22/01), 793 So.2d 463, a case in clergy malpractice, based on allegations that a pastor negligently revealed personal and confidential information that was disclosed during private spiritual counseling, in upholding the sustaining of an exception of no cause of action:
A pastor who provides counseling services usually does so under the aegis of his church, and is not subjected to the same standards as a state-licensed psychiatrist or social worker. Distinctively faith-based religious principles may guide pastoral counseling; courts therefore abstain from ruling on such counseling, lest they create an “excessive entanglement” which is prohibited by the First Amendment. In short, courts have no right to interpret religious doctrines.
Id. at p. 4; 793 So.2d at 466.

Cause of Action for Breach of Mandatory Reporter Provisions’!

Moreover, and more significantly, we find it important to note that even if we found the priest in this matter to be a mandatory reporter, there is no civil cause of action and no civil remedy for any alleged violation of that statute.
11sLouisiana Children’s Code art. 609A(2) clearly and expressly provides: “Violation of the duties imposed upon a mandatory reporter subjects the offender to criminal prosecution authorized by R.S. 14:403(A)(1).” Louisiana Revised Statutes, Title 14, is a criminal statute. Specifically, La. R.S. 14:403(A)(1) provides that anyone who knowingly and willfully fails to report (if required to do so under La. Ch.C. art. 609) shall, upon conviction, be fined not more than five hundred dollars or imprisoned for not more than six months, or both. There are no civil remedies provided in the entire statutory scheme. Accordingly, we find there is no civil remedy, and therefore, no civil cause of action for an alleged breach of the mandatory reporter duty to report. That remedy is expressly delegated to criminal law enforcement. See Fontenot v. Manpower [Motivation], Educ. and Training, Inc., 594 So.2d 998, 999-1000 (La.App. 3 Cir. 1992), where the trial court’s judgment sustaining the defendants’ exception of no cause of action and dismissing the suit, ruling plaintiffs have no civil remedy under La. R.S. 23:1691, which is a criminal statute, was affirmed. Cf. Keller v. Aymond, 98-843 (La.App. 3 Cir. 12/23/98), 722 So.2d 1224, 1227, writs denied, 99-0199 and 99-0219 (La.4/1/99), 742 So.2d 551 and 552, cert. denied, 528 U.S. 963,120 S.Ct. 397, 145 L.Ed.2d 310 (1999), where *737 the court held that the Electronic Surveillance Act, La. R.S. 15:1301 et sequitur, provides specific remedies in the form of criminal fines and imprisonment for the “willful” interception, disclosure, and use of the communication, and also provides specific civil remedies in the form of monetary damages, including attorney fees and punitive damages, against any person who intercepts, discloses, or uses such information. No such civil remedies are provided in this matter.
CONCLUSION
Therefore, to the extent that the trial court’s ruling left remaining any cause of action against the priest, for any reportable information to which he may have been privy outside of the confessional, the judgment is hereby reversed.
For the foregoing reasons, we hereby raise and grant the peremptory exception of no cause of action, based on our review of the petition and the absence of any | ^allegations supporting a viable civil cause of action against the priest and/or the Church in this matter. Accordingly, the-plaintiffs’ claims against the defendants/re-lators, the priest and the Church, are hereby dismissed in their entirety, with prejudice. Costs of this grant of certiorari are assessed to the plaintiffs.
THE TRIAL COURT’S JUDGMENT ON THE MOTION IN LIMINE IS REVERSED, AND THE MOTION IN LI-MINE IS HEREBY GRANTED; PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION RAISED AND GRANTED; PLAINTIFFS’ CLAIMS AGAINST THE DEFENDANTS/RELA-TORS, THE PRIEST AND THE CHURCH, ARE HEREBY DISMISSED.
KUHN, J, Concurs and Assigns Reasons.

. The actual reports made by the minor child were that on several occasions, Mr. Charlet kissed her aggressively, sticking his tongue down her throat, and fondled her breasts underneath her shirt and bra. There are also specific allegations about a sexually-laced journal that Mr. Charlet wrote during a trip to Korea, detailing his desires that the girl be on that trip with him, and including an entry that he had taken a naked picture of himself in the shower to send her at a later time. He allegedly gave the 53-page journal to the minor child upon his return from that trip.

. We note that the constitutional issue is certainly implicated in this case. However, the parties advised this court during the oral argument that in accordance with the longstanding jurisprudence that precludes this court from determining the constitutionality of a statute until after such determination has been made by a trial court, they had separately and subsequently raised that specific issue and that that proceeding is currently pending in the trial court. Accordingly, we need not address or decide that issue.

. We note that the record also contains evidence clearly establishing that the confidentiality owed to all communications had during a confession is also included in the mandates of the Roman Catholic Church law, known as the Code of Canon Law, pursuant to which a priest is precluded from divulging information acquired through the Sacrament of Reconciliation. The confidentiality attached to such information is cloaked by the "Seal of Confession," which is absolute, and a violation thereof results in the "in stanter ” excommunication of the priest — the most severe penalty known to the Church. Because we have found that the priest is not a mandatory reporter under the Louisiana Civil Law, we are neither faced with nor need to decide whether any such law which may mandate reporting is in conflict with the First Amendment’s Constitutional mandate of separation between Church and State.