PER CURIAM.
I, This writ presents the issue of whether a party is precluded from offering any evidence of her confession and whether a priest has a duty to report allegations of sexual abuse perpetrated on a minor parishioner. For the following reasons, we grant the plaintiffs’ writ, reversing and vacating the court of appeal’s judgment and reinstating the trial court’s judgment.
FACTS AND PROCEDURAL HISTORY
On July 6, 2009, plaintiffs, the parents of a minor daughter, filed a petition for damages suffered by them and their daughter as a result of the alleged inappropriate and sexual acts perpetrated on the minor child. They named as defendants: the alleged perpetrator, then-deceased George J. Charlet, Jr., a well-known, long-time parishioner and active member of Our Lady of the Assumption Catholic Church; Char-let Funeral Home, Inc. of which Mr. Char-let was the alleged President; the priest, for allegedly being a mandatory reporter who failed to report the abuse allegations; and the Roman Catholic Church of the Diocese of Baton Rouge (“Church”), alleging vicarious liability for the alleged misconduct of the 12priest in failing to report the sexual abuse, as well as for the negligent training and supervision of the priest.
The petition alleges during the summer of 2008, when the minor child was approximately fourteen years of age, there began an exchange of emails from Mr. Charlet, who was then 64 years of age, to the minor child, which soon increased in frequency and became “laced with seductive nuances.” The petition further details the continued wrongful acts of Mr. Charlet, which culminated with kissing and fondling the minor child.
Plaintiffs allege the minor child became confused and scared over the evolving “relationship” with Mr. Charlet, and on three separate occasions, she decided to seek spiritual guidance through confession with the defendant priest. The petition alleges on Tuesday, July 15, 2008, and Tuesday, July 29, 2008, prior to the 6:30 p.m. mass at the church, as well as on at least one other occasion after July 29, 2008, the minor child related to the priest during her confession Mr. Charlet had inappropriately touched her, kissed her, and told her that “he wanted to make love to her.” According to the petition, and consistent with the minor child’s subsequent deposition testimony, the priest allegedly responded she simply needed to handle the situation herself, because otherwise, “too many people would be hurt.” The minor child testified that, during one of those confessions, she told the priest what had happened and asked for advice on how to *1179 end it. According to her deposition testimony: “He just said, this is your problem. Sweep it under the floor and get rid of it.”
Subsequent to these three alleged confessions, the abusive acts continued. According to the allegations in the petition and the deposition testimony in the record, subsequent “meetings” were had-one between the priest and Mr. and Mrs. Char-let, and another between the Charlets and the minor child’s parents (the Isplaintiffs) — concerning the “obsessive number of emails and phone calls” between Mr. Charlet and the minor child and the seemingly inappropriate closeness between the two that had been observed by various parishioners.
Shortly thereafter, the parents confronted their minor daughter about the emails and phone calls, at which time, she confessed to the true nature of the relationship with Mr. Charlet, including details of the inappropriate sexual contacts. The plaintiffs immediately contacted Mr. Char-let, ordering him to cease contact with their daughter, and filed a formal complaint against Mr. Charlet with the East Feliciana Parish Sheriffs Department. According to the petition, the investigation was ongoing when Mr. Charlet died unexpectedly, after suffering a massive heart attack while in post-operative recovery, following knee-replacement surgery.
Shortly before trial was scheduled to commence in the present matter, the Church filed its motion in limine, seeking to prevent the plaintiffs from “mentioning, referencing, and/or introducing evidence at trial of any confessions that may or may not have taken place” between plaintiffs’ minor child and the priest, while the priest was acting in his official capacity as a Diocesan priest and hearing confession from his parishioner. The trial court denied the motion, finding the testimony of the minor child regarding the confession was relevant and, certainly, as the holder of the privilege, she was entitled to waive it and testify. However, the trial court “did recognize the conundrum with which [the priest] is presented, and I know his solution to that is going to be that he is not going to say anything about any confession.”
On supervisory writ, the Court of Appeal, First Circuit, reversed the trial court’s denial of the motion and granted its own peremptory exception of no cause |4of action. [Parents of Minor Child] v. Charlet, 13-0316 (La.App. 1 Cir. 10/21/13), 135 So.3d 724, 2013 WL 5712245. In so ruling, the appellate court reasoned:
Because we have concluded that the priest is not a mandatory-reporter, there can be no private or civil cause of action against him for any breach of a statute inapplicable to him; thus, any evidence or testimony, by anyone, regarding the occurrence of a confession, or the subject matter thereof, is wholly inadmissible, irrelevant, and non-probative. Accordingly, the motion in limine, seeking to exclude all such evidence, should have been granted.
Id. at 735. Moreover, it found no civil cause of action or civil remedy for violation of the mandatory reporter provision either to report or advise. Id. at 736. Accordingly, the Court of Appeal dismissed the plaintiffs’ claims against the priest and the Church in their entirety, with prejudice.
DISCUSSION
Taking the issues in the order they were disposed of by the lower courts, we first address whether the confession itself is admissible and whether the penitent is allowed to testify as to her confession. Relevant herein, La.Code Evid. art. 511 sets forth the priest-penitent privilege and provides:
A. Definitions. As used in this Article:
*1180 (1) A “clergyman” is a minister, priest, rabbi, Christian Science practitioner, or other similar functionary of a religious organization, or an individual reasonably believed so to be by the person consulting him.
(2) A communication is “confidential” if it is made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication.
B. General rule of privilege. A person has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication by the person to a clergyman in his professional character as spiritual adviser.
C. Who may claim the privilege. The privilege may be claimed by the person or by his legal representative. The clergyman is presumed to have authority to claim the privilege on behalf of the person or deceased person.
|r,La.Code Evid. art. 511 (emphasis added). Under its provisions, the privilege clearly belongs to the penitent-communicant, not to the priest: “A person has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication by the person to a clergyman-” La.Code Evid. art. 511(B); see also La.Code Evid. art. 511, Comments-1992 ©(“Under this Article the privilege clearly belongs to the communicant”.). It follows, if the penitent waives the privilege, the priest cannot then raise it to protect himself as he can only “claim the privilege on behalf of the person,” not in his own right. La.Code Evid. art. 511(C). Therefore, we find the appellate court erred in granting the Church’s motion in limine, excluding all evidence of the confession in its entirety as the child/penitent is free to testify and introduce evidence as to her own confession.
The next question is whether the appellate court erred in dismissing the plaintiffs’ action against the priest and the Church on its own peremptory exception of no cause of action. In its ruling, the appellate court first noted there is no duty on a clergy member, the breach of which would sustain a private or civil cause of action. This reasoning, however, disregards our general concept of liability set forth in our Civil Code that “[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it,” La. Civ. Code art. 2315, and “[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill,” La. Civ.Code art. 2316. It likewise disregards the duty imposed by law on members of the clergy under La. Child. Code arts. 603(15) and 609.
Under the provisions of La. Child Code art. 603(15), a mandatory reporter is defined as “any of the following individuals”:
(c) “Member of the clergy” is any priest, rabbi, duly ordained clerical deacon or minister, Christian Science practitioner, or other similarly situated functionary of a religious organization, except that |fihe is not required to report a confidential communication, as defined in Code of Evidence Article 511, from a person to a member of the clergy who, in the course of the discipline or practice of that church, denomination, or organization, is authorized or accustomed to hearing confidential communications, and under the discipline or tenets of the church, denomination, or organization has a duty to keep such communications confidential. In that instance, he shall encourage that person to report the allegations to the appropriate authorities in accordance with Article 610.
La. Child. Code art. 603(15). A member of the clergy as a mandatory reporter under this provision then has a mandatory duty to report abuse in accordance with the *1181 following provisions of La. Child. Code art. 609:
Notwithstanding any claim of privileged communication, any mandatory reporter who has cause to believe that a child’s physical or mental health or welfare is endangered as a result of abuse or neglect or that abuse or neglect was a contributing factor in a child’s death shall report in accordance with Article 610.
La. Child. Code art. 609.
Whether this particular priest owed this particular duty to the plaintiffs in this particular factual context is a mixed question of law and fact. See Kenney v. Cox, 95-0126, p. 1 (La.3/30/95), 652 So.2d 992 (Dennis, J., eoncurring)(noting there is a “distinction between the existence of a general duty of care (a legal question) and the ‘legal cause’ or ‘duty/risk’ question of the particular duty owed in a particular factual context (a mixed question of law and fact)”); see also Pitre v. Louisiana Tech University, 95-1466, 95-1487, p. 22 (La.5/10/96), 673 So.2d 585, 596 (Lemmon, J., concurring; joined by Kimball, J.)(noting “[i]n the usual case where the duty owed depends upon the circumstances of the particular case, analysis of the defendant’s conduct should be done in terms of ‘no liability1 or ‘no breach of duty.’”). Therefore, we find the appellate court erred in dismissing plaintiffs’ claims with prejudice as the question of duty/risk should be resolved by the factfinder at trial, particularly herein where there exists material issues of fact concerning whether the communications between the child and the priest were | confessions per se and whether the priest obtained knowledge outside the confessional that would trigger his duty to report.
Accordingly, we reverse and vacate the appellate court’s judgment in its entirety, we hereby render judgment reinstating the judgment of the trial court, and we remand this matter for further proceedings consistent with this opinion.
REVERSED and VACATED; RENDERED and REMANDED TO THE DISTRICT COURT.
WEIMER, J., recused.
HUGHES, J., concurs and assigns reasons.