# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE  NEWS RELEASE #063

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinion handed down on the **28th day of October, 2016**, is as follows:

**PER CURIAM**:

2016-CA-1463    ROBERT D. MAYEUX, LISA M. MAYEUX, AND REBECCA MAYEUX v. GEORGE J. CHARLET, JR., DECEASED, CHARLET FUNERAL HOME, INC., REVEREND M. JEFFERY BAYHI, AND THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF BATON ROUGE (Parish of E. Baton Rouge)

Accordingly, we hereby vacate the District Court's declaration of unconstitutionality and remand this matter to the District Court for proceedings consistent with this opinion.
DECLARATION OF UNCONSTITUTIONALITY VACATED; and REMANDED TO THE DISTRICT COURT.

WEIMER, J., recused.
GUIDRY, J., would grant and docket.
CLARK, J., concurs in the result.

## SUPREME COURT OF LOUISIANA

## NO. 2016-CA-1463

## ROBERT D. MAYEUX AND LISA M. MAYEUX

## VERSUS

## GEORGE J. CHARLET, JR., DECEASED, CHARLET FUNERAL HOME, INC., REV. M. JEFFERY BAYHI, AND THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF BATON ROUGE

## ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT, FOR THE PARISH OF EAST BATON ROUGE HONORABLE R. MICHAEL CALDWELL, JUDGE

## PER CURIAM

This case concerns a judgment by the District Court declaring La. Child. Code art. 609 unconstitutional. La. Child. Code art. 609 requires any statutorily defined "mandatory reporter" of child abuse "who has cause to believe that a child's physical or mental health or welfare is endangered as a result of abuse," to report the suspected abuse irrespective of "any claim of privilege."[1] The issue presently at the center of this matter is whether a priest is a "mandatory reporter," as defined in La. Child. Code art. 603, when administering the Sacrament of Penance ("confession"), such that the provisions of La. Child. Code art. 609 would require him to report information learned during a sacramental confession.[2] For

---

[1] The relevant articles have since been amended, and certain provisions therein have been redesignated. All provisions herein will be referenced as they appeared in the Children's Code at the time of the alleged offense.

[2] The Sacrament of Penance is defined in Canon 959 of the Code of Canon Law:

> In the sacrament of penance the faithful who confess their sins to a legitimate minister, are sorry for them, and intend to reform themselves obtain from God through the absolution imparted by the same minister forgiveness for the sins they have committed after baptism and, at the same, time are reconciled with the Church which they have wounded by sinning.

Code of Canon Law of 1983, can. 959.

the following reasons, we find the issue in this case is one of statutory interpretation and should, therefore, be resolved on statutory grounds. Accordingly, we vacate the District Court's declaration of unconstitutionality as premature and remand this matter for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

On July 6, 2009, plaintiffs, Robert and Lisa Mayeux, filed a petition for damages suffered by them and their daughter, Rebecca Mayeux,[3] as a result of alleged inappropriate and sexual acts perpetrated on Rebecca. They named as defendants: the alleged perpetrator, then-deceased George J. Charlet, Jr., a well-known, long-time parishioner and active member of Our Lady of the Assumption Catholic Church; Charlet Funeral Home, Inc. of which Mr. Charlet was the alleged President; Rev. M. Jeffery Bayhi (Fr. Bayhi), for allegedly being a mandatory reporter who failed to report the abuse allegations; and the Roman Catholic Church of the Diocese of Baton Rouge ("Church"), alleging vicarious liability for the alleged misconduct of the priest in failing to report the sexual abuse, as well as for the negligent training and supervision of the priest.

In their petition, plaintiffs alleged Fr. Bayhi had knowledge of and failed to report that Mr. Charlet had inappropriate sexual contact with Rebecca. In particular, the petition alleged Fr. Bayhi (1) negligently advised Rebecca, then 14 years of age, during the sacrament of confession on at least three separate occasions she needed to personally handle the alleged sexually abusive situation with Mr. Charlet, and (2) negligently failed to immediately report the abuse to law enforcement personnel and Rebecca's parents pursuant to La. Child. Code art. 609.

Shortly before trial was scheduled to commence, the Church filed its motion in limine, seeking to prevent the plaintiffs from "mentioning, referencing, and/or

---

[3] Rebecca has now reached the age of majority and was added as a plaintiff on her own behalf.

introducing evidence at trial of any confessions that may or may not have taken place" between Rebecca and Fr. Bayhi, while the priest was acting in his official capacity as a Diocesan priest and hearing confession from his parishioner. The District Court denied the motion, finding the testimony of the minor child regarding the confession was relevant and, certainly, as the holder of the privilege, she was entitled to waive it and testify. However, the District Court "did recognize the conundrum with which [the priest] is presented, and I know his solution to that is going to be that he is not going to say anything about any confession."

On supervisory writ, the Court of Appeal, First Circuit, reversed the trial court's denial of the motion and granted its own peremptory exception of no cause of action. *[Parents of Minor Child] v. Charlet*, 13-0316 (La. App. 1 Cir. 10/21/13), 135 So.3d 724. In so ruling, the appellate court reasoned:

> Because we have concluded that the priest is not a mandatory-reporter, there can be no private or civil cause of action against him for any breach of a statute inapplicable to him; thus, any evidence or testimony, by anyone, regarding the occurrence of a confession, or the subject matter thereof, is wholly inadmissible, irrelevant, and non-probative. Accordingly, the motion in limine, seeking to exclude all such evidence, should have been granted.

*Id.* at p. 16, 135 So.3d at 735. Moreover, it found no civil cause of action or civil remedy for violation of the mandatory reporter provision either to report or advise. *Id*. at p. 17, 135 So.3d at 735. Accordingly, the Court of Appeal dismissed the plaintiffs' claims against the priest and the Church in their entirety, with prejudice.

In a per curiam, we reversed and vacated the appellate court's judgment in its entirety, rendered judgment reinstating the judgment of the trial court, and remanded the matter for further proceedings. *Parents of Minor Child v. Charlet*, 13-2879 (La. 4/4/14), 135 So.3d 1177. Therein, we specifically found "the appellate court erred in granting the Church's motion in limine, excluding all evidence of the confession in its entirety as the child/penitent is free to testify and

3

introduce evidence as to her own confession." *Id.* at p. 5, 135 So.3d at 1180. We further recognized:

> Whether this particular priest owed this particular duty to the plaintiffs in this particular factual context is a mixed question of law and fact. *See Kenney v. Cox*, 95–0126, p. 1 (La. 3/30/95), 652 So.2d 992 (Dennis, J., concurring)(noting there is a "distinction between the existence of a general duty of care (a legal question) and the 'legal cause' or 'duty/risk' question of the particular duty owed in a particular factual context (a mixed question of law and fact)"); *see also Pitre v. Louisiana Tech University*, 95–1466, 95–1487, p. 22 (La. 5/10/96), 673 So.2d 585, 596 (Lemmon, J., concurring; joined by Kimball, J.)(noting "[i]n the usual case where the duty owed depends upon the circumstances of the particular case, analysis of the defendant's conduct should be done in terms of 'no liability' or 'no breach of duty.'"). Therefore, we find the appellate court erred in dismissing plaintiffs' claims with prejudice as the question of duty/risk should be resolved by the factfinder at trial, particularly herein where there exists material issues of fact concerning whether the communications between the child and the priest were confessions *per se* and whether the priest obtained knowledge outside the confessional that would trigger his duty to report.

*Id.* at pp. 6-7, 135 So.3d at 1181. Subsequently, we denied the Church's rehearing application, *Parents of Minor Child v. Charlet*, 13-2879 (La. 5/23/14), 139 So.3d 519, and the United States Supreme Court likewise denied certiorari, *Roman Catholic Church of the Diocese of Baton Rouge v. Mayeux*, __ U.S. __, 135 S.Ct. 1154 (2015).

On remand, the District Court granted the Church's "Request to Declare Louisiana Children's Code Article 609 Unconstitutional," reasoning:

> Now, plaintiffs have vigorously opposed this motion, but they have offered no evidence other than Fr. Counce's testimony of how a priest might do something outside the confessional to achieve the goal of reporting suspected abuse. But this testimony dealt with non-privileged communications, that is those outside the confessional, while Article 609A1 deals specifically with privileged communications, that is, in this case, communications within the confessional. Thus, there has been no evidence to show that Article 609A1 is the least restrictive means of furthering the state's interest in reducing and punishing child abuse.
> …
> Accordingly, in analyzing Children's Code Article 609A1 as it could be applied to Fr. Bayhi in this case, and analyzing it in the

4

manner mandated by the legislature in the preservation of the Religious Freedom Act, I must find that this article violates Fr. Bayhi's right to the free exercise of his religion guaranteed to him by Article 1, Section 8, of the Louisiana Constitution.[4]

Thus, if this ruling is still in effect when we go to trial, the plaintiffs will not be allowed to present evidence to show or to argue to the jury that whatever Fr. Bayhi may have learned in any encounter with the plaintiff in what the jury determines to be a quote, confession, per se, as indicated by the Supreme Court, they will not be able to argue that that makes him a mandatory reporter under the provisions of the Children's Code or R.S. 14:403.

So, as I said, if the jury determines that what Fr. Bayhi may or may not have learned, was in a quote, confession, per se, plaintiffs will not be able to argue that that makes him a mandatory reporter. (Footnote added).

Plaintiffs now seek a direct appeal to this Court from the District Court's declaration of unconstitutionality.

## DISCUSSION

Our courts have long been reluctant to address the constitutionality of legislation unless required to do so by the case and the issues then before the court. *Matherne v. Gray Ins. Co.*, 95-0975, p. 3 (La. 10/16/95), 661 So.2d 432, 434. As we have strongly cautioned, a question of constitutional law should never be anticipated in advance of the necessity of deciding it, and courts should not pass on the constitutionality of legislation unless it is essential to the decision of the case or controversy. *Blanchard v. State Through Parks and Recreation Com'n*, 96-0053, p. 2 (La. 5/21/96), 673 So.2d 1000, 1002. Accordingly, this Court's approach in cases such as this is to first determine whether the case may be disposed of on non-constitutional grounds so to avoid unnecessarily reaching the constitutional issue. *M.J. Farms, Ltd. v. Exxon Mobile Corp.*, 07-2371, pp. 10-11 (La. 7/1/08), 998 So.2d 16, 25.

---

[4] La. Const. Art. I, § 8 provides: "No law shall be enacted respecting an establishment of religion or prohibiting the free exercise thereof."

In *Charlet*, we found material issues of fact existed concerning whether the communications between the minor child and the priest were confessions *per se* and whether the priest obtained knowledge outside the confession that would trigger his duty to report. *Charlet*, 13-2879 at pp. 6-7, 135 So.3d at 1177. As noted by Justice Hughes in his concurrence and alluded to by the per curiam, the mandatory reporting issue and corresponding application of the duty set forth in La. Child. Code art. 609, hinge upon the manner in which the priest came to know of the abuse allegations, a factual determination we left to the discretion of the factfinder. Until that factual determination has been made, any declaration of unconstitutionality is premature. Therefore, we vacate on the grounds of prematurity the judgment of the District Court, declaring La. Child. Code art. 609 unconstitutional.

While still reserving the factual issues to the factfinder's discretion, we nevertheless acknowledge the widespread confusion that has arisen over our holding in *Charlet* and recognize a need to both clarify and resolve the legal question left unanswered therein, which we suspect has brought about much of the confusion. After reciting the definition of "mandatory reporter" relevant to "members of the clergy" set forth in La. Child. Code art. 603, the *Charlet* court stated: "a member of the clergy as a mandatory reporter under this provision then has a mandatory duty to report abuse in accordance with the following provisions of La. Child. Code art. 609." *Charlet*, 13-2879 at p. 6, 135 So.3d at 1180-81. We did not, however, interpret the provisions of La. Child. Code art. 603, most particularly the explicit exception for priests from reporting confidential communication, which under the tenets of the church the priest is both authorized to hear and duty bound to keep confidential. In other words, we never conclusively determined whether a priest in administering sacramental confession

6

is a "mandatory reporter" under the provisions of La. Child. Code art. 603 and, thus, subject to the mandatory duty to report under La. Child. Code art. 609 in such circumstances. As this issue is one of statutory interpretation, it falls to this Court to ultimately resolve. Because resolution of this issue would greatly aid the parties and the courts as well as avoid further delay in the disposition of the present matter, we find it appropriate pursuant to our supervisory authority to now resolve this question of law, especially in view of the District Court declaring La. Child. Code art. 609 unconstitutional.[5]

---

[5] As the Court explained in *Unwired Telecom Corp. v. Parish of Calcasieu*, 03-0732 (La. 1/19/05), 903 So.2d 392:

> The Louisiana Supreme Court has been granted supervisory powers since the constitution of 1879. ALBERT TATE, JR., SUPERVISORY POWERS OF THE LOUISIANA COURTS OF APPEAL, 38 TUL. L.REV. 429, 430 (1964). Indeed, as provided, in pertinent part, in LA. CONST. ANN. ART. V, § 5(A), "The supreme court has general supervisory jurisdiction over all other courts." It is well recognized the constitutional grant of supervisory authority to this court is plenary, unfettered by jurisdictional requirements, and exercisable at the complete discretion of the court. *Progressive Sec. Ins. Co. v. Foster*, 97–2985 (La.4/23/98), 711 So.2d 675, 678 n3; *State Bond Comm'n v. All Taxpayers, Prop. Owners and Citizens of State*, 510 So.2d 662, 663 (La.1987); *State v. Wimberly*, 414 So.2d 666, 670 (La.1982); *Loeb v. Collier*, 131 La. 377, 59 So. 816 (1912); *State ex rel. Union Sawmill Co. v. Summit Lumber Co.*, 117 La. 643, 42 So. 195 (1906); TATE, 38 TUL. L.REV. at 430; COMMENT, SUPERVISORY POWERS OF THE SUPREME COURT OF LOUISIANA OVER INFERIOR COURTS, 34 TUL. L.REV. 165 1959). This Court can at all times intervene under its own plenary supervisory powers, whether or not an intermediate court has properly acted on the matter. TATE, 38 TUL. L.REV. at 430.
>
> From the above cited jurisprudence, it is clear this Court has a long history of exercising its supervisory jurisdiction when it deems it necessary. That is not to say this Court exercises its supervisory jurisdiction lightly. In practice, certain limitations upon the use of this power are recognized by this Court out of respect for the independence of other courts in the determination of questions confined to their judicial discretion, and to avoid usurping merely appellate jurisdiction not conferred upon us by the constitution. *Wimberly*, 414 So.2d at 670 (citing TATE, 38 TUL. L.REV. at 431; COMMENT, 34 TUL. L.REV. at 168). However, there are instances in which we have granted writs even though the relator did not exhaust his remedies in the lower court. COMMENT, 34 TUL. L.REV. at 171.
>
> The flexibility and extraordinary nature of supervisory writs render it extremely difficult to formulate any general rules as to when they will or will not issue. *Id*. In *Louisiana Associated Gen. Contractors, Inc. v. New Orleans Aviation Bd.*, 99-0025 (La.7/7/99), 764 So.2d 31, we granted writs according to our supervisory jurisdiction under LA. CONST. ART. V, § 5(A), even though relator did not have a right of direct appeal to this Court under LA. CONST. ART. V, § 5(D). There we granted writs in order to avoid further delay in the disposition of the matter that had previously been remanded to the trial court. *Louisiana Associated Gen. Contractors, Inc.*, 764 So.2d at 33. Other instances of this Court exercising its supervisory authority though relator had not exhausted its remedies

Legislation is the solemn expression of legislative will, and thus, the interpretation of legislation is primarily the search for the legislative intent. *Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance*, 98-0601, p. 15 (La. 10/20/98), 720 So.2d 1186, 1198. Accordingly, our rules of statutory construction are designed to ascertain and to enforce the intent of the Legislature. *Succession of Boyter*, 99-0761, p. 9 (La. 1/7/00), 756 So.2d 1122, 1128. The paramount consideration in such interpretation is ascertainment of the legislative intent and the reason or reasons, which prompted the Legislature to enact the law. *State v. Johnson*, 03-2993, p. 11 (La. 10/19/04), 884 So.2d 568, 575.

The starting point in the interpretation of any statute is the language of the statute itself as what a legislature says in the text of a statute is considered the best evidence of its intent and will. *M.J. Farms,* 07-2371 at p. 13, 998 So.2d at 27. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9; La. Rev. Stat. §§ 1:3 and 1:4. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ. Code art. 10; La. Rev. Stat. § 1:3. The legislative history of an act and contemporaneous circumstances are also helpful guides in ascertaining legislative intent. *Exxon Pipeline Co. v. Louisiana Public Service Com'n*, 98-1737, p. 9 (La. 3/2/99), 728 So.2d 855, 860.

---

in the lower courts include *Progressive Sec. Ins. Co.*, 711 So.2d at 678 n. 3; *State Bond Comm'n*, 510 So.2d at 663; State v. Peacock, 461 So.2d 1040, 1041 (La. 1984)("since this case has already been briefed and argued in this court, judicial economy will best be served by exercising our supervisory jurisdiction"); *Hainkel v. Henry*, 313 So.2d 577, 578 (La.1975).

*Unwired*, 03-0732 at pp. 8-10, 903 So.2d at 400-01.

Under La. Child. Code art. 603(15), a "mandatory reporter" is defined as "any of the following individuals":

> (c) "Member of the clergy" is any priest, rabbi, duly ordained clerical deacon or minister, Christian Science practitioner, or other similarly situated functionary of a religious organization, ***except that he is not required to report a confidential communication***, as defined in Code of Evidence Article 511, from a person to a member of the clergy who, in the course of the discipline or practice of that church, denomination, or organization, is authorized or accustomed to hearing confidential communications, and ***under the discipline or tenets of the church, denomination, or organization has a <u>duty</u> to keep such communications confidential.*** In that instance, he shall encourage that person to report the allegations to the appropriate authorities in accordance with Article 610.

La. Child. Code art. 603 (emphasis added). Pursuant to the plain language, priests are expressly excluded from the mandatory reporting requirement, *i.e.*, mandatory reporter status, when receiving "***a confidential communication***, as defined in Code of Evidence Article 511, from a person [when the priest], in the course of the discipline or practice of that church, denomination, or organization, is authorized or accustomed to hearing confidential communications, and ***under the discipline or tenets of the church, denomination, or organization has a <u>duty</u> to keep such communications confidential.***" Therefore, priests are not mandatory reporters of information acquired when (1) the communication is confidential communication under La. Code Evid. art. 511, (2) the priest in the course of the discipline or practice of that church, denomination, or organization, is authorized or accustomed to hearing the confidential communication, and (3) the priest under the discipline or tenets of the church, denomination, or organization has a duty to keep such communication confidential.

A "confidential communication" is defined under La. C.E. art. 511 as one that is "made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication." La. Code

Evid. art. 511(A)(2). If a communication is made to a priest privately and not intended for further disclosure except to the priest for the purpose of confession, repentance, and absolution, that communication is a confidential communication under La. Code Evid. 511. In accord with the tenets of the Roman Catholic Church, a priest is both authorized and accustomed to hearing confidential communications in sacramental confessions. *See* Code of Canon Law of 1983, can. 965 ("A priest alone is the minister of the sacrament of penance."). By those same tenets, the priest is absolutely forbidden under the inviolable seal of confession from betraying in any manner the confidentiality of communications made during the sacramental confession upon threat of immediate excommunication (expulsion from the church). *See* Code of Canon Law of 1983, cann. 983, 984, 1388.[6] Accordingly, any communication made to a priest privately in the sacrament of confession for the purpose of confession, repentance, and absolution is a confidential communication under La. Code Evid. 511, and the priest is *exempt* from mandatory reporter status in such circumstances by operation

_____

[6] Canons 983, 984, and 1388 provide, respectively:

> Can. 983 §1. The sacramental seal is inviolable; therefore it is absolutely forbidden for a confessor to betray in any way a penitent in words or in any manner and for any reason.
> §2. The interpreter, if there is one, and all others who in any way have knowledge of sins from confession are also obliged to observe secrecy.

> Can. 984 §1. A confessor is prohibited completely from using knowledge acquired from confession to the detriment of the penitent even when any danger of revelation is excluded.
> §2. A person who has been placed in authority cannot use in any manner for external governance the knowledge about sins which he has received in confession at any time.

> Can. 1388 §1. A confessor who directly violates the sacramental seal incurs a latae sententiae excommunication reserved to the Apostolic See; one who does so only indirectly is to be punished according to the gravity of the delict.
> §2. An interpreter and the others mentioned in Can. 983, §2 who violate the secret are to be punished with a just penalty, not excluding excommunication.

Code of Canon Law of 1983, cann. 983, 984, 1388.

of La. Child. Code art. 603, because "under the … tenets of the [Roman Catholic] church" he has an inviolable "duty to keep such communications confidential."

La. Child. Code art. 609, which the trial court declared unconstitutional, then provides:

> A. With respect to *mandatory reporters*:
>
> (1) Notwithstanding any claim of privileged communication, *any mandatory reporter* who has cause to believe that a child's physical or mental health or welfare is endangered as a result of abuse or neglect or that abuse or neglect was a contributing factor in a child's death shall report in accordance with Article 610.

La. Child. Code art. 609(A)(1). As evident in its reasoning, the District Court found an imposition of the duty arising hereunder would require a priest to breach the seal of confession contrary to the clear dictates of the Roman Catholic Church and, therefore, such an imposition would violate the priest's constitutional right to the free exercise of his religion, rendering this provision unconstitutional if so applied. However, and most significantly, the unambiguous statutory language is applicable only to "mandatory reporters." Because priests in regards to sacramental confessions are not "mandatory reporters" under the explicit definition in La. Child. Code art. 603, it logically follows the mandatory duty to report set forth in La. Child. Code art. 609 is not applicable to priestly confessors. Simply stated, there is no need to declare La. Child. Code art. 609 unconstitutional because a priest under these circumstances is not a mandatory reporter; he is excluded because he does not qualify as a mandatory reporter. Only those who qualify as a mandatory reporter fall under La. Child. Code art. 609.

Plaintiffs, however, on original hearing argued La. Child. Code art. 609 overrides the La. Child. Code art. 603 exemption where the clergy member has reason to believe a child's physical or mental health or welfare is endangered. They further reasoned that because La. Child. Code art. 609 "was in the

11

[Children's Code] since its inception," the Legislature knew about the article when it made revisions to the Children's Code in 2003, adding clergy to the class of mandatory reporters. *See* 2003 La. Acts 1187. Their interpretation, however, fatally disregards the confession exemption that has ***always*** existed in the definition of "mandatory reporter," and a review of the legislative history provides further proof the Legislature never intended to impose such mandatory reporter status on priests when administering the sacrament of confession, even in the context of the eminent harm exception under La. Child. Code art. 609.

Though the term "clergy" was not added to the Children's Code until 2003 through Act 1187 of that year, La. Child. Code art. 603(13)(b) prior thereto always specifically provided:

> (13) "Mandatory reporter" is any of the following individuals performing their occupational duties:
> …
> (b) "Mental health/social service practitioner" is any individual who provides mental health care or social service diagnosis, assessment, counseling, or treatment, including a psychiatrist, psychologist, marriage or family counselor, social worker, aide, or other individual who provides counseling services to a child or his family. However, when a ***priest***, rabbi, duly ordained minister, or Christian Science practitioner has acquired knowledge of abuse or neglect from a person ***during a confession*** or other sacred communication, he shall encourage that person to report but ***shall not be a mandatory reporter of that information given in confession*** or sacred communication. (Emphasis added).

La. Child. Code art. 603 (1992).[7] Act 1187 amended the definition of mandatory reporter to provide:

Art. 603. Definitions

As used in this Title:

* * *

---

[7] The language of this provision remanded unchanged from the enactment of the Children's Code in 1991 by Acts 235 of that year until the amendment in 2003.

(13) "Mandatory reporter" is any of the following individuals performing their occupational duties:

(a)  * * *

(b)**(i)** "Mental health/social service" practitioner is any individual who provides mental health care or social service diagnosis, assessment, counseling, or treatment, including a psychiatrist, psychologist, marriage or family counselor, social worker, **member of the clergy**, aide, or other individual who provides counseling services to a child or his family. ~~However, when a priest, rabbi, duly ordained minister, or Christian Science practitioner has acquired knowledge of abuse or neglect from a person during a confession or other sacred communication, he shall encourage that person to report but shall not be a mandatory reporter of that information given in confession or sacred communication.~~

**Article 603(13)(b)(ii) is all new law.**

(ii) A member of the clergy is any priest, rabbi, duly ordained clerical deacon or minister, Christian Science practitioner, or other similarly situated functionary of a religious organization.

**Article 603(13)(b)(iii) is all new law.**

(iii) A member of the clergy is not required to report a confidential communication, as defined in Code of Evidence Article 511(A)(2), from a person to a member of the clergy who in the course of the discipline or practice of that church, denomination, or organization is authorized and accustomed to hearing confidential communication and, under the discipline or tenets of that church, denomination, or organization, has a duty to keep such communication confidential. In that instance, the member of the clergy shall encourage that person to report the allegations to the department.

2003 La. Acts 1187. Through House Resolution 169 of the 2003 Regular Session, the Legislature then charged the Louisiana State Law Institute "to add a comment to Children's Code Article 603 to express the legislative intent of the term 'counseling', specifically that members of the clergy who exclusively provide spiritual counseling are not covered" by the amendment. The comments explain how the Legislature sought to recognize other roles clergy play in their

administrative, supervisory, or secular counseling capacities that would give rise to a duty to report and, thus, mandatory reporter status, while maintaining the exemption in their exclusively spiritual counseling capacity as to any confidential communications arising therefrom, which are considered "sacrosanct and nondisclosable," such as sacramental confessions:

> The scope of the definition of "mandatory reporters" of child abuse has *always recognized* that priests, rabbis, pastors or other religious ministers typically provide counseling to members of their congregations and that many denominations consider those *communications*, *such as the confessional*, to be *sacrosanct and nondisclosable*. Respecting that policy, former law included religious ministers within the category of "mental health/social service practitioner" but *exempted* them from mandatory reporting if the knowledge of abuse or neglect arose out of a "confession or other sacred communication." In 2003, the legislature created a special category for members of the clergy and *continued exemption* for "confidential communication," the term used by the Evidence Code. Code of Evidence Article 511, which governs communications to clergymen, defines the privileged confidential communication as one "made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication." *Members of the clergy who exclusively provide spiritual counseling are not required to report disclosures of abuse made in the course of a confidential communication.* However, the legislature also recognized that members of the clergy may also engage in other roles, such as administrative and organizational work as well as provide supervision for other clergy or lay workers. The exemption from reporting does not extend to nonconfidential communications given to a priest or other minister during administrative, supervisory, or secular counseling or other type of conference. (Emphasis added).

As the comments show and the statutory language reveals, the Legislature always intended to exclude priests from the definition of a "mandatory reporter" when administering sacramental confession. Because the provisions of La. Child. Code art. 609 speak only to "mandatory reporters," a priest when administering the sacrament of confession has no duty to report any confidential communications made during the confession that, by the tenets of the Roman Catholic Church, he is authorized to hear and is also duty bound to keep confidential.

**DECREE**

Accordingly, we hereby vacate the District Court's declaration of unconstitutionality and remand this matter to the District Court for proceedings consistent with this opinion.

**DECLARATION OF UNCONSTITUTIONALITY VACATED; and REMANDED TO THE DISTRICT COURT.**

10/28/16

SUPREME COURT OF LOUISIANA

NO.  2016-CA-1463

ROBERT D. MAYEUX AND LISA M. MAYEUX

VERSUS

GEORGE J. CHARLET, JR., DECEASED, CHARLET FUNERAL HOME,
INC., REV. M. JEFFERY BAYHI, AND THE ROMAN CATHOLIC
CHURCH OF THE DIOCESE OF BATON ROUGE

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT,
FOR THE PARISH OF EAST BATON ROUGE HONORABLE R.
MICHAEL CALDWELL, JUDGE


Guidry, J., would grant and docket.